NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| ERIC POTTER, : | |
| : | |
| Petitioner, : | Civil No. 08-1239 (AET) |
| : | |
| v. : | |
| : | **O P I N I O N** |
| BRUCE HAUCK, et al., : | |
| : | |
| Respondents. : | |

---

**APPEARANCES:**

> ERIC POTTER, I.D. #307554/507371
> Northern State Prison
> Newark, New Jersey 07114
> Petitioner pro se

> LUIS A. VALENTIN, Prosecutor, Monmouth County
> PATRICIA B. QUELCH, Assistant Prosecutor
> Attorneys for Respondents

**THOMPSON, District Judge**


On March 12, 2008, Petitioner, a prisoner confined at Northern State Prison, Newark, New Jersey, executed the instant Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254(a), challenging a judgment of conviction rendered by the Superior Court of New Jersey, Law Division, Monmouth County, on January 10, 2005. See Docket Entry No. 1, ¶¶ 1-2. On May 9, 2008, Respondents filed their Answer urging this Court to dismiss the Petition. See Docket Entry No. 9. This Court agrees with Respondents' conclusion that the Petition must be denied.

## DISCUSSION

**I.   FACTUAL BACKGROUND**

The circumstances of Petitioner's offense, gleaned by this Court from the documents attached to Respondents' Answer, appear to be in full coherence with the summary provided by the Appellate Division.  The Appellate Division outlined the relevant events as follows:

> During the evening of November 18, 2002, [Petitioner] was observed by Asbury Park police officer Lorenzo Pettaway standing, in a well-known drug dealing area . . . . After observing [Petitioner] for approximately five minutes, Pettaway, who believed that defendant was the subject of an outstanding arrest warrant, called headquarters to confirm that fact. Upon confirmation, Pettaway placed [Petitioner] under arrest and conducted a cursory pat down that revealed no contraband.  However, when an inventory search was conducted at headquarters, [Petitioner] was found to have thirty-nine bags of heroin secreted in a placket in his pants, near the zipper.  . . .  Following indictment, counsel was assigned to [Petitioner] by the Public Defender.  [Petitioner], believing that Pettaway's claim of an outstanding warrant was a ruse, sought to use that fact as the basis for a motion to suppress the evidence of the drugs found on him. It was [Petitioner's] position that . . . no active warrant . . . exist[ed].  . . .  On the day scheduled for the suppression hearing, [Petitioner] sought to dismiss his attorney, claiming that the attorney refused to call the police and other witnesses who . . . could confirm [Petitioner's] position [as to the non-existence of an active warrant].  However, as his attorney explained to the court, in the discovery produced, the State had listed the number of the warrant in question, which had been issued by municipal judge Kreizman in Ocean Township. Upon the attorney's request, the State had produced the actual active warrant, which matched the number of that provided in discovery.  Additionally, the attorney stated that he had been unable to "find any witnesses to bring into court to say they looked in the computer and there was no warrant."  [Petitioner], who adamantly sought, nonetheless, to demonstrate the

illusory nature of the warrant, stated to the motion judge that he wished to hire a lawyer, and he requested an adjournment of the hearing, which was granted. Although the hearing was adjourned from July 3, 2003 to September 25, 2003, [Petitioner] apparently was unable to secure private representation, and he appeared pro se. Prior to the hearing, [Petitioner] had attempted to subpoena the witnesses that he claimed would demonstrate the absence of an active warrant. However, the witnesses did not appear at the hearing, because service of the subpoenas had never occurred. Upon learning that fact, the motion judge denied the suppression motion. Fifteen months later, on January 4, 2005, trial commenced before a different judge. In the interim, the Public Defender had assigned a different attorney to represent [Petitioner]. However, [Petitioner] was dissatisfied with his services, as well, since he, like the prior attorney, recognized the validity of the warrant proffered by the State and declined to challenge it in the manner that defendant proposed. . . . [Petitioner], as previously, asserted that he wished to retain private counsel . . . . However, upon further investigation, . . . it was determined that [no private counsel] had not been retained . . . . When the judge was informed by the State that trial had been adjourned on nine prior occasions, and upon recognition that more than two years had elapsed since the date of the crime, the trial judge refused [Petitioner's] request for a further adjournment, stating that he believed that [Petitioner] was seeking to manipulate the criminal justice system. . . . A trial then occurred [in January of 2005], in which [Petitioner, acting pro se, with back-up counsel,] called the witnesses that he claimed his attorneys had refused to utilize. He was found guilty on all counts and sentenced [accordingly].

State v. Potter ("Potter-1"), 2007 WL 1803956, at *1 (N.J. Super.

Ct. App. Div. June 25, 2007); accord Ans., Exs. 1-6, 11, 15-17, 18,

23. Petitioner challenged his conviction and sentence in the state

courts, raising the following six Points:

POINT I:        THE TRIAL JUDGE ERRED IN PERMITTING [PETITIONER] TO
                ACT AS HIS OWN ATTORNEY AS THE REQUIREMENTS FOR
                SUCH A DECISION WERE NOT MET (raises through
                counsel);

```
POINT II:       THE TRIAL COURT ERRED IN DENYING [PETITIONER] AN
                ADJOURNMENT OF HIS TRIAL SO THAT HE COULD OBTAIN
                THE SERVICES OF THE ATTORNEY OF HIS CHOICE (raises
                through counsel);
POINT III:      [PETITIONER'S]  SENTENCE  IS EXCESSIVE (raises
                through counsel);
POINT IV:       THE   COURT   FAILED   TO  CONVEY   THE APPLICABLE
                PRINCIPLES OF LAW AND THE STATE FAILED TO ENTER
                TESTIMONY THAT THE SUBSTANCE WHICH [PETITIONER] WAS
                CHARGED WITH WAS HEROIN (raises pro se);
POINT V:        THE  STATE  FAILED  TO  ADHERE  TO  ITS  NOTICE OF
                OBLIGATION STATUTE WHICH GIVES [PETITIONER] 10 DAYS
                NOTICE IN WHICH [PETITIONER] COULD OBJECT TO THE
                ADMISSION OF THE LABORATORY CERTIFICATE (raises pro
                se).
POINT VI:       THE TRIAL COURT ERRED WHEN [PETITIONER] WAS DENIED
                A SUPPRESSION HEARING, BECAUSE THE CLERK OF THE
                COURT   FAILED   TO   FORWARD   SUBPOENAS   TO   THE
                [PETITIONER'S] WITNESSES (raises pro se).
```

Potter-1, 2007 WL 1803956, at *1; accord Ans., Exs. 34-35.[1]

On June 25, 2007, the Appellate Division affirmed Petitioner's

sentence and conviction.   See Potter-1, 2007 WL 1803956, at *6;

_____

[1] Apparently, following his January 2005 trial underlying the instant matter, Petitioner had another trial in June 2005. Appealing his conviction ensuing from the June 2005 trial, Petitioner raised, inter alia, the following grounds:

```
POINT I:        THE TRIAL COURT ERRED IN DENYING THE MOTION TO
                SUPPRESS;
POINT II:       THE TRIAL COURT ERRED BY NOT ALLOWING [PETITIONER]
                TO REPRESENT HIMSELF.
```

State v. Potter ("Potter-2"), 2007 WL 2188133, at *1 (N.J. Super. Ct. App. Div. June 25, 2007).  While affirming the trial court's decision as to the suppression motion, see id., the Appellate Division reversed Petitioner's conviction ensuing from the June 2005 trial and remanded the matter for a new trial on the grounds that "the trial court erred in denying [Petitioner's] request to represent himself.  [Petitioner's]  may ultimately conduct his own defense to his own detriment, nevertheless, the right to defend is personal."  Id. at 5 (quotation marks, citation and original brackets omitted).

accord Ans., Ex. 37.   The Supreme Court of New Jersey denied
Petitioner certification with respect to the Appellate Division's
ruling.  See Ans., Ex. 40; State v. Potter, 192 N.J. 482 (2007).


## II.  PETITIONER'S INSTANT CHALLENGES

In this action, the Petition states the following Grounds:

GROUND ONE:    THE CONVICTION WAS OBTAINED BY THE USE OF EVIDENCE
               GAINED THROUGH THE USE OF AN ILLEGAL SEARCH AND
               SEIZURE;
GROUND TWO:    [PETITIONER] WAS DENIED A SUPPRESSION HEARING AS
               REQUESTED DURING THE STATUS CONFERENCE;
GROUND THREE:  THE STATE FAILED TO PROVE EVERY ELEMENT OF ITS CASE
               WHEN IT FAILED TO ANAL[Y]ZE THE CONTROLLED
               DANGEROUS SUBSTANCE IN ITS TOTALITY BUT TESTED ONLY
               ONE BAG OF THE TOTAL BAGS SEIZED;
GROUND FOUR:   THE CONVICTION WAS OBTAINED THROUGH ILLEGAL SEARCH
               & SEIZURE WHEN A SUPPRESSION HEARING WAS DENIED.

Docket Entry No. 1, ¶ 12.  In addition, Petitioner's memorandum

states one more ground, reading:


GROUND FIVE:   [PETITIONER'S] SIXTH AMENDMENT RIGHTS WERE VIOLATED
               WHEN THE COURT DENIED AN ADJOURNMENT SOUGHT IN
               ORDER THAT PRIVATE COUNSEL COULD REVIEW THE FILE
               PRIOR TO FILING A NOTICE OF APPEARANCE.

Docket Entry No. 1-3, at 8-9.


## III. STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading

requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994)

(citing 28 U.S.C. § 2254, Rule 2(c)).  The petition must specify

all the grounds for relief available to the petitioner, state the

facts supporting each ground, and state the relief requested.  See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.  See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (the district court erred when it "went beyond the habeas petition"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (the court is not permitted to consider ground, evident from the facts but not raised in the petition).  Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim.  See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation

marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

Moreover, the AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated Petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. See 28 U.S.C. § 2254(d). Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the

claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla, 355 F.3d at 247. On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F. 3d at 678.

As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied. See 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to Petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Petitioner is in custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a), (d)(2).

When the grounds raised in the petition are governed by 28 U.S.C. § 2254(d)(1), which prohibits a district court from granting habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), the court must begin its analysis by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state

court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[2]  See id. at 409-10.  "The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F. 3d 92, 100 (3d Cir. 2005)).

## IV.   PETITIONER'S APPLICATION LACKS MERIT

Respondents urge this Court to dismiss the Petition as unexhausted because "[n]owhere in the [P]etition does [Petitioner] allege a federal claim."  Ans. at 11.  However, the "passport to federal jurisdiction" exhaustion requirement differs from the "path to obtaining a writ" requirement of stating a federal claim. Moreover, Respondents assert that Petitioner failed to "demonstrate

_____

[2]

See also Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) ("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent") (citations and internal quotation marks omitted).

that [his trial] court's decisions were unreasonable" application of the United States Supreme Court's precedent, id. at 16, because the Appellate Division and the Supreme Court of New Jersey determined that the *state* law was properly applied by the trial court. See id. at 17.  Noting its bewilderment with Respondents' arguments, this Court dismisses the Petition on other grounds, as detailed below.

### A.   Fourth Amendment Challenges

Petitioner's Grounds One, Two and Four present three paraphrased versions of the same Fourth Amendment claim, namely, that Petitioner's arrest and resulting search were obtained without an active warrant.  See Docket Entry No. 1-3, at 1-5, 6-8.  In other words, in these three Grounds, Petition raises the very challenge that served as basis for: (a) his firing of his two public defenders (who refused to foster Petitioner's claim as to non-existence of the warrant in light of the overwhelming evidence indicating that the warrant was indeed active and outstanding), (b) his application for suppression hearing, (c) his trial examination of witnesses as to the existence and validity of the warrant, and (4) his Point VI appellate argument presented to both the Appellate Division and Supreme Court of New Jersey.

Leaving aside the fact that Petitioner is challenging the warrant, which existence and active status was established during

Petitioner's proceedings with the degree of certainty rarely applicable to a piece of documentary evidence, this Court finds that Petitioner's instant habeas challenge is wholly meritless in light of the United States Supreme Court's decision in State v. Powell, 428 U.S. 465 (1976). In Powell, the Supreme Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in a unconstitutional search or seizure was introduced at his trial." Id. at 482-83. Moreover, the Third Circuit guided that, under this standard, "[t]he question is not whether the trial court 'correctly' decided the fourth amendment issue, but whether the petitioner was given an *opportunity* for *full* and *fair* state court litigation of his fourth amendment claim." Petillo v. State of New Jersey, 562 F.2d 903, 906 (3d Cir. 1977) (emphasis in original) (citations omitted). Here, Petitioner's Fourth Amendment claim was addressed at his suppression hearing, extensively litigated during his trial, noted in the Appellate Division's decision as "insufficient . . . to warrant discussion in a written opinion", Potter, 2007 WL 1803956, at *6, and examined by the Supreme Court of New Jersey when Petitioner sought his certification. Since Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state courts, see Petillo, 562 F.2d at 906, Petitioner is not

entitled to habeas relief on the challenges comprising his Grounds One, Two and Four.

### B.   <u>Quantity of Drug Challenges</u>

Petitioner's Ground Three, reading

> THE STATE FAILED TO PROVE EVERY ELEMENT OF ITS CASE WHEN IT FAILED TO ANAL[Y]ZE THE CONTROLLED DANGEROUS SUBSTANCE IN ITS TOTALITY BUT TESTED ONLY ONE BAG OF THE TOTAL BAGS SEIZED,

corresponds way too loosely to Petitioner's Points IV and V presented to the state courts and reading, jointly,

> THE COURT FAILED TO CONVEY THE APPLICABLE PRINCIPLES OF LAW AND THE STATE FAILED TO ENTER TESTIMONY THAT THE SUBSTANCE WHICH [PETITIONER] WAS CHARGED WITH WAS HEROIN; THE STATE FAILED TO ADHERE TO ITS NOTICE OF OBLIGATION STATUTE WHICH GIVES [PETITIONER] 10 DAYS NOTICE IN WHICH [PETITIONER] COULD OBJECT TO THE ADMISSION OF THE LABORATORY CERTIFICATE,

to satisfy the exhaustion requirement.[3]  However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(2); <u>see also</u> <u>Lambert v. Blackwell</u>, 134 F.3d 506, 515 (3d

---

[3] A state prisoner applying for a writ of habeas corpus in federal court must "exhaust[] the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1); <u>Rose v. Lundy</u>, 455 U.S. 509, 515 (1982); <u>Toulson v. Beyer</u>, 987 F.2d 984, 987 (3d Cir. 1993), by presenting state courts with claims "substantial equivalent" of the claims asserted in the federal habeas petition, <u>see</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971), which means that the legal theory and factual predicate of the claims presented to the state courts and habeas claims must be the same. <u>See</u> <u>id</u>. at 277.

Cir. 1997) (district court may deny an unexhausted petition on the merits under § 2254(b)(2) "if it is perfectly clear that the applicant does not raise even a colorable federal claim").

Here, with respect to his Ground Three, Petitioner asserts that

> the issue of fact to be determined was whether the substance seized was a controlled dangerous substance and that each of the bags contained heroin. This element needed to be proven as [Petitioner] was charged with intent to distribute. Unless [Petitioner] was arrested in the act of distributing heroin (which was not the case here) more than one [bag] needed to be in [Petitioner's] possession.

Docket Entry no. 1-3, at 5. In other words, while not challenging the fact that the search produced "thirty-nine bags of heroin secreted in a placket in his pants, near the zipper," Potter-1, 2007 WL 1803956, at *1, Petitioner vaguely implies that the sole bag tested by the laboratory contained heroin (and was intended for Petitioner's own consumption), while the remaining thirty-eight bags contained a non-drug chemical composition having the appearance of controlled dangerous substance, e.g., sugar powder. Construing, with a great deal of imagination, the foregoing excerpt as Petitioner's constitutional claim, the Court reads it as a reference to Brady implicated Petitioner'ss due process rights. Under Brady, state and federal prosecutors must turn over exculpatory and impeachment evidence, whether or not requested by the defense, where the evidence is material to either guilt or punishment. See Strickler v. Greene, 527 U.S. 263 (1999); Giglio

v. United States, 405 U.S. 150 (1972).  However, discrepancies in
the amount of CDS attributable to the chain of custody do not
qualify as material evidence, unless a discrepancy affects the
degree of offense.  See United States v. Arnulfo-Sanchez, 71 Fed.
App. 35 (10th Cir. 2003), cert. denied, 540 U.S. 1140 (2004).
Here, the state statute at issue, N.J. Stat. Ann. § 2C:35-5, does
not require a person to have more than one bag of controlled
dangerous substance in his possession in order to be found guilty
of possession with intent to distribute.  Moreover, for the
purposes of *all* provisions, pursuant to which Petitioner was
convicted, that is, third-degree offenses, i.e., Section
2C:35-10a(1) (*third*-degree possession of a controlled dangerous
substance), Section 2C:35-5b(3) (*third*-degree possession of heroin
with the intent to distribute it), and Section 2C:35-7
(*third*-degree possession with the intent to distribute it within
1000 feet of a school), a conviction could not turn on the
magnitude of the amount of heroin in Petitioner's possession.[4]
Hence, even if this Court is to presume that Petitioner, for the
reasons unfathomable to the Court, elected to decorate the zipper-
area of his inner-pants with an arrangement consisting of one bag
of heroin and thirty-eight bags of powdered white substance of non-
drug nature, and the prosecution provided the jury with the

---

[4]  See, e.g., N.J. Stat. Ann. § 2C:35-5b(3) (clarifying that
the possession resulting in a conviction for a crime of the third
degree requires quantity of *less* than one-half ounce).

chemical analysis of the sole heroin bag, accompanied by the prosecutor's non-expert opinion about the chemical composition about the remaining thirty-eight bags, Petitioner's due process rights would not be implicated by such presentation. Consequently, Petitioner's Ground Three does not merit habeas relief.


C.   **Adjournment Challenges**

Finally, Petitioner's Ground Five (noted in his memorandum but omitted in his Petition) asserts that he was denied his right to counsel when the trial judge refused to grant him adjournment enabling the counsel of Petitioner's choice to examine Petitioner's file and to determine whether to undertake Petitioner's representation.[5]

The state court's discussion of this matter reads as follows:

[After firing his second public defender because he] recognized the validity of the warrant proffered by the State and . . . conveyed plea offers to [Petitioner], which [Petitioner] regarded as "selling [him] out," [Petitioner, again,] asserted that he wished to retain private counsel, and he named a Mr. Moriarty as his choice.  However, upon further investigation, which included a call by the judge to Moriarty, it was determined that Moriarty had not been retained, that he would look at the file only if an adjournment were obtained, and that fees had not been discussed. When the

_____

[5] It appears that Petitioner's instant claim challenging denial of a continuance which, possibly, prevented Petitioner from having counsel of his choice, is unrelated to the fact that Petitioner proceeded pro se during his criminal proceedings since Petitioner's claim in Potter-2 was expressly based on the decision of Petitioner's trial judge to *mandate* legal representation.

judge was informed by the State that trial had been adjourned on nine prior occasions, and upon recognition that more than two years had elapsed since the date of the crime, the trial judge refused [Petitioner's] request for a further adjournment . . . .  The judge then proceeded to determine whether to permit [Petitioner] to proceed pro se with back-up counsel.  [The trial judge] observed:

> . . . Now, it's not a perfect world, Mr. Potter, to the extent that the Sixth Amendment allowed someone to be represented by counsel, but that doesn't mean counsel of their choosing.  The public defender's office is in charge of appointing counsel in cases where someone can't afford counsel.  They appointed you Mr. Kinarney. I know you were unhappy with Mr. Kinarney; that was before I was involved in the case.  They appointed you another counsel and I realize that you're not happy with Mr. Eisler.  I would just note one more time for the record, Mr. Potter, that Mr. Eisler preserved all of your issues on appeal, on your last case when he filed his motion for a new trial.  I did not see any action or inaction by Mr. Eisler that was not in your interest.  And I'm just saying that because while you've tried to frame this as an issue where you felt you have no choice, I believe you do have a choice.  It may not be the perfect choice that you can pick a lawyer, but your choice is to have Mr. Eisler represent you but you've indicated to the court that you want to represent yourself.  . . .

We . . . find no abuse of discretion on the part of the trial judge in declining to adjourn the trial of the matter for the tenth time. [See] State v. McLaughlin, 310 N.J. Super. 242, 257-59 (App .Div.), certif. denied, 156 N.J. 381 (1998).  As the judge stated at the time, if [Petitioner] had, in fact, demonstrated that a substitute attorney had been retained, he might have looked more favorably upon the adjournment application.  However, such was not the case, since, as the judge himself confirmed, attorney Moriarty had merely been contacted, and he had not reviewed the file, agreed to the representation, negotiated a fee, or received any payment.  Given the age of the case, [Petitioner's]

chronic and legally groundless dissatisfaction with his assigned attorneys, the number of prior adjournments that had occurred, and the late notice provided by [Petitioner] of his intent to retain private counsel, we regard the trial judge to have acted well within his discretion in rejecting [Petitioner's] request for a further adjournment and requiring that the matter proceed to trial.  As we stated in <u>McLaughlin</u>:

> Although the right to have the assistance of counsel is guaranteed by both the federal and state constitutions, <u>State v. Fusco</u>, 93 N.J. 578, 583 (1983), the right to retain counsel of one's own choice is not absolute and " 'cannot be insisted upon in a manner that will obstruct an orderly procedure in the courts of justice and deprive such courts of the exercise of their inherent powers to control the same.'" <u>State v. Furguson</u>, 198 N.J.Super. 395, 401 (App. Div.) (quoting <u>Smith v. United States</u>, 288 F. 259, 261 (D.C. Cir.1923)), <u>certif.</u> <u>denied</u>, 101 N.J. 266 (1985).

<u>Potter-1</u>, 2007 WL 1803956, at *4-5.

Although the state courts resolved this issue on the basis of state law, this Court concludes that the state courts also implicitly affirmed the trial court's decision with respect to constitutional challenges contained in Petitioner's state appeals. <u>Cf.</u> <u>Rompilla</u>, 355 F.3d at 247 (A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever).  This state courts' decision to affirm denial of a continuance was constitutionally valid in light the United States Supreme Court's decisions in <u>Morris v. Slappy</u>, 461 U.S. 1 (1983), and <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589 (1964).

The Supreme Court in <u>Ungar</u>, addressing a claim that denial of a motion for a continuance deprived the defendant "of his constitutional right to engage counsel and to defend against the charge," <u>id.</u> at 589, concluded that "there are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances presented in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  <u>Id.</u>  Hence, when presented with a motion for continuance, a district court must determine if the decision was arbitrary in view of the balance between following factors: the efficient administration of criminal justice, the accused's rights, and the rights of other defendants whose trials may be delayed as a result of the continuance.  <u>See United States v. Fischbach & Moore, Inc.</u>, 750 F.2d 1183 (3d Cir. 1984).

In <u>Morris v. Slappy</u>, 461 U.S. 1, a case building on <u>Unger</u>, the defendant's original attorney was hospitalized shortly before trial, and the ill attorney's colleague substituted. <u>See id.</u> at 5. The defendant complained to the trial court that his new counsel had not had sufficient time to become familiar with his case or to conduct his own investigation.  <u>See id.</u> at 6. The trial judge construed the defendant's comments as a motion for a continuance, and denied the motion, <u>see id.</u>; the decision initiated defendant's expressed dissatisfaction with his new attorney's representation."

Id. at 8.  When the defendant's repeated request that the case be adjourned (until his original attorney was available to represent him) was denied, the defendant refused to cooperate with his present counsel, see id., and was ultimately convicted.  See id. at 8-9.  After the defendant initiated habeas corpus proceedings, the district court rejected his claim that the trial court had abused its discretion by denying the request for a continuance.  See id. at 10.  The Ninth Circuit reversed the district court, concluding that the Sixth Amendment right to counsel would "be without substance if it did not include the right to a meaningful attorney-client relationship," implying that such relationship could be built only with counsel of choice or, at the very least, with counsel, whom the defendant would be able to find common grounds with.  Id. at 10.  The United States Supreme Court reversed the Ninth Circuit's decision, stating that the court of appeals' conclusion was "without basis in the law."  Id. at 13.  The Court observed that "[n]o court could possibly guarantee that a defendant will develop the kind of rapport with his attorney--privately retained or provided by the public--that the Court of Appeals thought part of the Sixth Amendment guarantee of counsel."  Id. at 13-14.  Since the decision in Morris to give substantial weight to the trial court's efficiency of criminal administration concerns was entered in the context of a defendant's request for a continuance to permit an *already retained* counsel time to become

more familiar with the client's case, Petitioner's allegations that
he needed a continuance to allow an attorney who was merely
considering the possibility of representing Petitioner warrant even
less weight than the preferences of the defendant in Morris.
Indeed, as Petitioner's trial court observed, Petitioner was not
obligated to proceed pro se, he was merely expected to proceed, and
he could do so with counsel who preserved all Petitioner's issues
for appellate purposes (and whose "shortcomings" were limited to
conveying a plea offer and refusing to foster a claim directly
contradicted by prosecutorial evidence).

    Assessing the balance between the efficiency of administration
of justice consideration presented by Petitioner's extremely
protracted criminal proceedings[6] against Petitioner's apparent
interest in have continuances until he would be able to locate a
counsel willing to rubberstamp Petitioner's legal theories and
claims that all prosecutorial facts were forged, see Unger, 376
U.S. at 589, this Court finds that Petitioner's trial court's
decision to deny him adjournment was not arbitrary, and the
affirmation of that decision by the Appellate Division and the
Supreme Court of New Jersey was not an unreasonable application of

---

    [6] Petitioner claims now that all previous adjournments were
granted upon requests entered by the State, see Docket Entry No.
1-3, at 9, but this Court's review of the record and timetable of
relevant proceedings indicate that the bulk of the delays were
caused by Petitioner's suppression applications, attempts to file
interlocutory appeal and firings of assigned public defenders.

the principles underlying relevant Supreme Court's precedent.[7]

## CERTIFICATE OF APPEALABILITY

The Court next must determine whether a certificate of appealability should issue. See Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he failed to make a substantial showing of the denial of a federal right necessary for a certificate of appealability to issue. Thus, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

---

[7]  Same as the Supreme Court of New Jersey, this Court is particularly persuaded by the fact that the continuance was sought so the prospective private counsel would make up his mind as to whether to take Petitioner's case. Indeed, such vague possibility could not outweigh efficiency considerations presented by Petitioner's case. While Petitioner asserts that the private counsel of his choice "agreed to take the case" and the only issue was "a single caveat, [i.e.,] that he be allowed to review the file prior to entering his notice of appearance," Docket Entry No. 1-3, at 9, Petitioner's statement presents a legal oxymoron, since an attorney's "agreement" to represent a client creates a de facto attorney-client relationship, subject to enforcement, while the "caveat" alleged by Petitioner unambiguously indicates that the attorney did not agree to representation and was merely giving it a general thought that could very well yielded a decision to refuse representation.

## CONCLUSION

For the foregoing reasons, this Court denies Petitioner writ of habeas corpus in light of Petitioner's failure to assert a violation of a federal right.

A certificate of appealability will not issue.

An appropriate Order accompanies this Opinion.


s/ Anne E. Thompson
**Anne E. Thompson**
**United States District Court**

Dated: June 2nd, 2008